# United States Court of Appeals
## For the First Circuit

———————————

No. 09-1450

UNITED STATES OF AMERICA,

Appellant,

v.

JOSEPH PROCHILO,

Defendant, Appellee.

———————————

No. 09-1523

UNITED STATES OF AMERICA,

Appellant,

v.

ELVIS GUERRERO,

Defendant, Appellee.

———————————

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

———————————

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Howard, Circuit Judge.

———————————

*The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

———————————

    <u>Cynthia A. Young</u>, Assistant United States Attorney, with whom
<u>Michael K. Loucks</u>, Acting United States Attorney, was on brief, for
appellant.
    <u>Bernard Grossberg</u> for Joseph Prochilo.
    <u>George F. Gormley</u>, with whom <u>Stephen P. Super</u> was on brief,
for Elvis Guerrero.

———————————

January 13, 2011

———————————

HOWARD, <u>Circuit Judge</u>.  In these interlocutory appeals in two unrelated criminal cases, the government challenges the district court's orders excluding cooperating witnesses from testifying at trial.  In each case, the district court excluded a key prosecution witness after concluding that the government had failed to meet its disclosure obligations under <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963).  Under <u>Brady</u>, the government has a duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment.  <u>Id.</u> at 87.  We address the two appeals below.

## I.  Joseph Prochilo

A sting operation set up by agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") resulted in the indictment of Joseph Prochilo for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The case against Prochilo relies almost solely on the expected testimony of a government cooperator.  The cooperator had played a central role in the sting, both arranging and consummating the purchase of the firearm.  Prochilo seasonably sought from the government exculpatory and impeachment information and materials relating to the cooperator.  The discovery request focused on evidence that Prochilo might use to impeach the witness, and cited eighteen different categories of evidence.  Essentially, Prochilo requested all cooperator-related evidence in the government's possession,

including: (1) all cooperation agreements between the witness and government agencies; (2) copies of reports or documents relating to the witness's "contacts" with those agencies; and (3) the complete files that any government agency had on the witness.

At a hearing on the discovery motion, the government maintained that it had reviewed the cooperator-related files and had turned over any Brady material in its possession.  Among other things, the government had disclosed to Prochilo:

> all payments the government [had] made to the [cooperating witness (CW)]; the CW's cooperation agreement and confidential informant authorization request with the ATF; the CW's criminal record; that the CW was in the witness protection program and had violated a rule of that program by making an unauthorized trip to a prohibited area; that the CW worked for, and was paid by, the DEA for information, services, and security; that the CW wrote a movie script that discussed his use of oxycontin and criminal activities; an account of the CW's illicit drug use and involvement in illegal drug sales; that [the] ATF had notified certain law enforcement authorities of the CW's relationship with [the] ATF, which had led to the dismissal of state criminal charges against him; and that the CW had worked as an informant for and received promises, rewards, and inducements from the United States Secret Service, the Essex County [Massachusetts] Sheriff's Department, the DEA [Drug Enforcement Agency], and the FBI [Federal Bureau of Investigation].[1]

---

[1] Most of the evidence that the government provided to Prochilo is not part of the record on appeal because it was exchanged between the parties and not filed with the district court.  Various pleadings filed by the parties, however, discuss what evidence the government gave Prochilo and there is no dispute that Prochilo received the materials mentioned here.

The district court initially denied Prochilo's motion for production as moot, with the explicit provision that he could renew his motion after reviewing the materials disclosed by the government.

Not long after the hearing, Prochilo filed a renewed motion for production of exculpatory and impeachment information and materials. In this motion, Prochilo asked the district court to order the government to disclose the witness's "entire relationship with the government." Prochilo requested: (1) details regarding the witness's work with the United States Secret Service, the Essex County Sheriff's Department, the DEA, and the FBI; (2) information regarding the other ATF cases on which the cooperator worked; (3) the witness's cooperation agreements with government agencies other than the ATF; (4) a description of other firearms seized by the government as a result of the witness's cooperation; (5) information about the cooperator's contacts with other government agencies as they related to other matters or other investigations; and (6) a list of all benefits the witness received as a result of these contacts. The district court granted Prochilo's motion.

The government continued to resist additional disclosure, and in response Prochilo argued that the requested materials would support his claim that the witness had set him up, and they would enable him to explore bias arising from the cooperator's

relationship to the government.  The district court reaffirmed its earlier ruling, ordering the government "to produce all files related to the [witness's] relationship with the Government, including the CW's relationship with the Government in all other cases."

In motions for reconsideration, the government maintained that Prochilo had failed to provide any "plausible indication" that the materials he sought contained evidence that was both favorable to him and material.  The government did, however, provide additional information about the cooperator's work with various federal law enforcement agencies, noting that the witness had provided assistance in twelve cases or investigations by the ATF (two of which also involved the DEA), four cases or investigations by the DEA alone, and two investigations by the FBI.  The government explained that the cooperator had assisted these agencies by either providing information or playing a direct role in arranged transactions.  The government continued to maintain, however, that it had already turned over all Brady material relating to the witness.  It also asked the court to exclude the witness from testifying at trial in the event that the court denied reconsideration.  The district court reaffirmed its order and excluded the witness.  This appeal ensued.

## Discussion

"[W]e review Brady determinations for abuse of discretion." United States v. DeCologero, 530 F.3d 36, 65 (1st Cir. 2008).  Under Brady, the government has a duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment.  373 U.S. at 87; Strickler v. Greene, 527 U.S. 263, 280 (1999).  Evidence is "favorable to the accused" if it is either exculpatory or impeaching in nature and "material" if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different. Strickler, 527 U.S. at 280; Kyles v. Whitley, 514 U.S. 419, 435 (1995) (evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict").

The government is primarily responsible for deciding what evidence it must disclose to the defendant under Brady. Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987).  And at least where a defendant has made only a general request for Brady material, the government's decision about disclosure is ordinarily final - - unless it emerges later that exculpatory evidence was not disclosed.  Id. at 59.

When the defendant seeks access to specific materials that the government maintains are not discoverable under Brady, however, a trial court may in some instances conduct an in camera

-7-

review of the disputed materials.  See Ritchie, 480 U.S. at 58
n.15; United States v. Caro-Muniz, 406 F.3d 22, 29-30 (1st Cir.
2005); 6 Wayne R. LaFave et al., Criminal Procedure § 24.3(b) (3d
ed. 2007).  To justify such a review, the defendant must make some
showing that the materials in question could contain favorable,
material evidence.  Ritchie, 480 U.S. at 58 n.15 (explaining that
the defendant must establish a "basis for his claim" that what he
seeks "contains material evidence"); United States v. Brandon, 17
F.3d 409, 456 (1st Cir. 1994); LaFave, supra, § 24.3(b).  This
showing cannot consist of mere speculation.  United States v.
Navarro, 737 F.2d 625, 631 (7th Cir. 1984); see also Brandon, 17
F.3d at 456.  Rather, the defendant should be able to articulate
with some specificity what evidence he hopes to find in the
requested materials, why he thinks the materials contain this
evidence, and finally, why this evidence would be both favorable to
him and material.  United States v. Rosario-Peralta, 175 F.3d 48,
55-56 (1st Cir. 1999) (illustrating the kind of showing required);
Caro-Muniz, 406 F.3d at 30 (similar).

     The district court's order that the government disclose
all cooperator-related material in its possession directly to
Prochilo was not faithful to these principles.  Prochilo's motions
were general and speculative in nature.  To be sure, many of the
materials he requested could, depending on the facts of a
particular case, contain material impeachment evidence.  The

-8-

government, however, maintained that it had already disclosed all such evidence in Prochilo's case.  At this juncture, it was up to Prochilo to put that representation into question by identifying specific materials he wanted the court to inspect in camera and by showing them to be favorable and material.  He failed to do so. Accordingly, there was no basis for the court to conduct an in camera inspection, much less order disclosure directly to Prochilo.

Prochilo's four primary arguments in support of the court's order are unpersuasive.  First, he speculates that the undisclosed materials might reveal that the cooperating witness is "flawed" or that the government's investigative techniques were flawed.  Where, as here, however, the government maintains that it has turned over all material impeachment evidence, speculation is insufficient to permit even an in camera review of the requested materials.

Second, Prochilo appears to suggest that the materials that he desires could help substantiate an entrapment defense.  For starters, Prochilo has yet to assert an entrapment defense.  But even if he had, Brady already requires the government to disclose all favorable and material evidence in its possession to the defendant; this includes any evidence indicating that the witness had improperly induced Prochilo or others to commit crimes. Nothing in the record of this case suggests that the government has failed to turn over such evidence.

-9-

Third, Prochilo claims that at a hearing the government stated that this is the only ATF investigation on which the witness worked that has resulted in a prosecution.  This "lack of prosecution," he contends, "begs for disclosure as it is certainly relevant to the issue of [the witness's] credibility regarding the reasons that the other matters were not prosecuted."  The government never made such a statement, however.  At the hearing, the government stated only that none of the other cases had resulted in a trial.  When questioned at oral argument in this court, the government stated that some of the investigations did in fact result in prosecutions.

Fourth, Prochilo makes the familiar argument that he is entitled to the requested materials because only his counsel, not the government or the district court, will be able to judge what evidence is both favorable to him and material.  The Supreme Court has already rejected this argument.  Ritchie, 480 U.S. at 59 ("Defense counsel has no constitutional right to conduct his own search of the [government's] files to argue relevance.").  Brady did not create a broad rule of discovery in criminal cases.  See id. at 59-60.

In sum, the district court's approach shifted from the government to the defendant the primary authority to assess whether material in the government's possession must be disclosed, and in

so doing endorsed a broad rule of discovery in criminal cases; Brady permits neither. See Navarro, 737 F.2d at 631.

## II. Elvis Guerrero

In this case a sting operation set up by federal agents resulted in the arrests and indictments of Elvis Guerrero and two others for attempting to purchase cocaine. The government charged all three with conspiring to distribute cocaine and with attempting to possess cocaine with the intent to distribute. See 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 2.

The government's case against Guerrero hinges almost exclusively on the testimony of a long-time government cooperator who had played an integral role in the sting. The government disclosed to Guerrero impeachment evidence that it considered discoverable under Brady. This evidence included information that the witness had been paid $5,000 for her work on the case, a redacted report of her criminal and probation record, and information indicating that she had worked for the government for many years.

Not satisfied with the extent of the disclosure, Guerrero filed a motion to compel further discovery, requesting that the court order the government "to produce all information in its possession, custody, or control, regarding the [witness]," and

identifying several categories of information.[2]  The motion also explained generally how each category of evidence could contain useful impeachment evidence.

The motion to compel was addressed at a final pretrial conference, during which the government maintained that it had reviewed the witness's voluminous file and had turned over all Brady material in its possession.  Despite this representation, the district court granted the defendant's motion in its entirety, telling the government to "give him everything."  The court further ruled that, to the extent that the government had doubts about particular materials, it could ask the court to review those materials in camera.

The government filed a motion for reconsideration, stating that it had supplemented its disclosure, turning over "the CW's [(cooperating witness's)] criminal history; a detailed listing

---

[2] The motion to compel encompassed the following categories: (1) information about the government's prior use of the cooperator, including the case name and number of each prosecution in which she had been used by any federal, state, or local law enforcement agency as a witness, a cooperating individual, or source of information; (2) all agreements between the witness and any federal, state, or local law enforcement entity, all documents reflecting payments made to her or on her behalf, and any information regarding promises, rewards or inducements (including preferential treatment) to the witness, her family, or her friends and associates; (3) the witness's arrest and conviction record and all information concerning any unauthorized criminal activity or misconduct by her, as well as any prison records; (4) information regarding any assets the cooperator had obtained from criminal activity over the last 15 years; and (5) information reflecting her bad character or matters relevant to her credibility, including evidence of impairments, poor memory, and bias.

of payments the CW received in this case as well as in other
investigations and/or cases over the past 17 years, reflecting both
the years of payment and number of cases; information about the
CW's immigration status; and four cooperation agreements between
the Drug Enforcement Administration ('DEA') and the CW, including
the cooperation agreement in force during this case and one
currently in force as the CW continues to work with the DEA."  The
government maintained that no other material in its possession was
discoverable under Brady.  As in Prochilo's case, the prosecutors
asked the court, if it were to deny reconsideration, to also
exclude the witness from testifying so that an immediate appeal
would lie.   The district court denied the motion for
reconsideration and excluded the witness.

### Discussion

Applying the same standards as we have applied in
reviewing the government's appeal in Prochilo's case, we cannot
discern a basis for concluding that Guerrero met his burden of
articulating with some specificity what evidence he hopes to find
in the requested materials, why he thinks the materials contain
this evidence, and why this evidence would be both favorable to him
and also material.  Rosario-Peralta, 175 F.3d 48, 55-56.

The motion to compel discovery broadly requested access
to all cooperator-related materials in the government's possession
and merely speculated that these materials could contain material

-13-

impeachment evidence.   Such a showing is insufficient to permit even an _in camera_ review of the disputed materials.   Nevertheless, the district court once again ordered the government to disclose all cooperator-related materials directly to the defendant. Consequently, the court erred both in its disclosure ruling and to the extent that it agreed to conduct an _in camera_ review of certain cooperator-related materials.

We do not, however, completely rule out _in camera_ review here.   On remand, Guerrero should be allowed to request access to specific materials and to make a case for _in camera_ inspection of those materials.   In his appellate brief, Guerrero does endeavor to make the necessary particularized showing.   In support of his request for the files of unrelated cases on which the cooperator worked, Guerrero says that he has evidence showing that she was paid widely varying amounts for her work (e.g., $18,700 in one case and $100 in another).   He argues that the case files may reveal that the witness worked on a commission basis, that is, payments to her were dependent on how many defendants she implicated.   Access to the case files, Guerrero claims, will allow him to determine whether or not this commission theory is accurate and, if it is, will provide him with further grounds for impeachment.   Whether such a showing is sufficient to justify an _in camera_ review of certain files is committed to the discretion of the district court in the first instance.

-14-

A couple of loose ends remain. First, Guerrero's suggestion that the Confrontation Clause of the Sixth Amendment provides an independent ground for upholding the district court's order is incorrect. The Supreme Court has thus far only evaluated disclosure claims like Guerrero's under the Due Process Clause of the Fifth and Fourteenth Amendments. <u>United States</u> v. <u>Bagley</u>, 473 U.S. 674-78 (1985); <u>see also</u> <u>Ritchie</u>, 480 U.S. at 51-54. Second, his argument about the government's handling of a videotape of the alleged drug transaction is not properly before us.

### III.  Conclusion

We **reverse** the exclusion order in No. 09-1450 (Prochilo), **vacate** the exclusion order in No. 09-1523 (Guerrero), and **remand** both cases for further proceedings consistent with this opinion.